Charles E. Lyons, II, V-76614
C.S.P. Solano (12-229)
P.O. Box, 4000
Vacaville, Ca. 95696

Petitioner In Pro Se

FILED

E-filing

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Charles E. Lyons, II, | ) | Case No. |
| Petitioner, | ) | |
| | ) | PETITIONER FOR |
| -vs- | ) | WRIT OF HABEAS CORPUS |
| | ) | |
| D.K. Sisto, Warden, | ) | **08    3205** |
| a person having custody | ) | |
| of petitioner, | ) | |
| Respondent. | ) | |
| | ) | |

**(PR)**

**CRB**

TO: THE HONORABLE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA:

Pursuant to 28 U.S.C. § 2254, above-named petitioner, **CHARLES EDWARD LYONS,**

II (hereinafter "Petitioner"), proceeding without the appointment of trained

counsel, respectfully petitions this court for a petition for writ of habeas

corpus, and by this verified petition, sets forth the following facts and causes

for the issuance of said writ.

I

Petitioner is unlawfully confined by the Warden at Solano State Prison in

Vacaville, California, D.K. Sisto. Petitioner is serving a term of imprisonment

of 15 years, which was unlawfully imposed by the Superior Court for the County

of Santa Clara, in case number CC440907.

-1-

II

By information filed in Santa Clara County Court, Petitioner was charged in a five count information sheet.

Count one charged petitioner with eluding a police officer, causing serious bodily injury on January 21, 2004, in violation of Vehicle Code § 2800.3. Count two alleged that Petitioner forcibly kidnapped Vanessa Valles on the same date in violation of Penal Code § 207, subd. (a). Count three alleged false imprisonment of Vanessa Valles on the same date in violation of Penal Code § 236/237. Great bodily injury enhancements with the meaning of § 12022.7, subd. (a) and 1203 subd. (e)(3) were alleged as to counts one through three.

Count four charged Petitioner with driving  on a suspended license in violation of Vehicle Code § 14601.1, subd. (a), a misdemeanor, and count five charged Petitioner with another misdemeanor, possession of marijuana while driving, in violation of Vehicle Code § 23222, subd. (b).

The information alleged one prior conviction within the  meaning of § 677, subd. (b) and 1192.7. subd. (c), and three prior convictions within the meaning of § 677.5, subd. (b)

On July 14, 2005, Petitioner plead guilty to counts one, three and five and admitted the enhancements. Counts two and four were dismissed. Honorable Superior Court Judge Linda Condron found there was a conflict of interest between Petitioner and his retained counsel and allowed Petitioner to discharge counsel and be represented by new public counsel, moved to withdraw his guilty plea. Following an evidentiary hearing on December 23, 2004, Honorable Linda Condron denied Petitioners motion.

On January 13, 2005, Petitioner filed a statement in mitigation of sentence and moved to set aside his prior strike conviction. Following an evidentiary hearing on  April 7, 2005, the court denied that motion.

On April 21,2005, the court sentenced Petitioner to a total prison term  of

1. Counsel's failure to investigate facts of law and the crime.

2. Counsel failure to secure and present defense witnesses at the time of trial on 7/13/04.

3. Counsel failures were at issue when the court noted counsels unpreparedness to handle the case at that time.

4. Counsel and Petitioner's conflict of interest rendered counsel ineffective.

5. Counsel mishandling of attorney client work product discovery.

**VI**

Petitioner alleges and believes that the judgment of conviction and sentence are invalid and in violation of Fifth, Sixth, and  Fourteenth Amendments of the United States Constitution.

**VII**

The contentions in support of this petition are fully set forth in the Memorandum of Points and Authorities as set fourth in Petitioner's Exhibit A., Petition for Review submitted to the California Supreme Court in Case Number S145210, and Exhibit B., Writ of Habeas Corps, submitted to the California Supreme Court in Case Number S159110, and is attached hereto and incorporated by reference. Additionally incorporated by reference here are the Clerk's and reporters transcripts and matter of record in Superior Court Case No. CC440907. The Court is further asked to take judicial notice of the records on file in the Superior Court for the County of Santa Clara and the California Supreme Court.

**VIII**

All issues raised in this petition have been raised before the California Supreme Court. Specifically, all factual allegations and Constitutional claims have been presented to the high court in the  Petition for Review in Case No. S145210 (Exhibit A), and Writ of Habeas Corpus filed in Case No. S159110, (Exhibit B.).

fifteen years. A timely notice of appeal was filed.

### III

On Appeal, Petitioner raised the following claims:

A. Petitioner's Federal and State Constitutional right to effective assistance of counsel and Due Process were violated by the Trial Court's refusal to allow Petitioner to withdraw his guilty plea which was not entered voluntarily and intelligently because his counsel misadvised him as to his maximum punishment.

B. Petitioner's trial counsel materially misrepresented Petitioner's maximum sentence.

C. Because of counsel's material representation, Petitioner's guilty plea was not voluntary and intelligent, and the court refusal to allow Petitioner to withdraw his plea violated his Constitutional Right to effective assistance of counsel and Due Process of Law.

D. The misadvice of Petitioner's trial counsel constituted ineffective assistance of counsel which prejudiced Petitioner and requires reversal of his judgment of conviction.

On June 20, 2006, the Court of Appeal, in a unpublished opinion, affirmed the judgment. (Court of Appeal Case No. H028810.)

### IV

Petitioner filed a timely Petition for review in the California Supreme Court arguing the same as above-mentioned.

The California Supreme Court denied the Petition for Review on September 27, 2007, (Case No. S145210.).

### V

Petitioner filed a Writ of Habeas Corpus in the California Supreme Court arguing that:

A. Ineffective Assistance of Trial Counsel

-3-

## IX

The California Supreme Court denied Petitioner's Writ of Habeas Corpus in Case No. S159110 on June 11, 2008.

## X

Petitioner has not sought relief from any Federal Court at any time since the initial proceedings in his criminal court ended in his conviction and sentence.

///

///

## P R A Y E R   F O R   R E L I E F

**WHEREFORE,** Petitioner prays that this Court:

1. Take judicial notice of the record in People v. Charles Edward Lyons, II,
   Superior Court Case No. CC440907; Court of Appeal Case No. H028810;
   California Supreme Court Case No. S145210, and Case No. S159110.

2. Order Respondent state to show cause why Petitioner is not entitled to
   the relief herein sought.

3. After full consideration of the issues raised in this petition, vacate
   the judgment and sentence imposed upon Petitioner.

4. Appoint counsel to represent Petitioner in this habeas proceeding and
   approve necessary expenses for private investigator (Sheila J. Klopper)
   if circumstances deem it appropriate for full and fair adjudication of
   petition.

5. Order such other and further relief as the Court may deem necessary.

Date: 6/20/08

Respectfully submitted,

by: Charles E Lyons

**CHARLES EDWARD LYONS, II**
**Petitioner In Pro Se**

///
///

///

///

-6-

## V E R I F I C A T I O N

I **CHARLES EDWARD LYONS, II,** do hereby declare under penalty of perjuy as follows:

I am the Petitioner in the above-entitled habeas matter. I verify that the facts alleged herein are true to the best of my knowledge and belief, and that said allegation are supported by the record on direct appeal.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

This <u>Verification</u> was executed at Solano State Prison, Vacaville, California on June _20_ , 2008.


_____
**CHARLES EDWARD LYONS, II**
**Petitioner In Pro Se**


/ / /

/ / /

/ / /


-7-

## A R G U M E N T

### Statement of facts

For the purposes of this petition, Petitioner will rely on the statement of facts set forward in Exhibit A. and Exhibit B., the Petitioner for Review in Case No. 145210, and Writ of Habeas Corpus Case No. S159110.

## M E M O R N A N D U M   O F   L A W

I. A PETITION FOR WRIT OF HABEAS CORPUS IS AN APPROPRIATE REMEDY FOR CHALLENGING UNLAWFUL RESTRAINT OF A PRISONER.

Title 28 of the United States Code, section 2254, provides for habeas corpus relief in Federal Court to review the legality of state court criminal proceedings.

The writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution of laws or treatises of the United States. (See 28 U.S.C. § 2254 et seq.)

All legal issues set fourth in this Petition for Writ of Habeas Corpus and supporting Memorandum of Points and Authorities have been raised and submitted to the California Supreme Court by way of direct appeal and relief has been denied as to each issue. Petitioner now raises these issues, stating violations of Federal Constitutional rights, before the United States District Court, Northern District of California, and states that these issues are now properly before this Court. (See 28 U.S.C. § 2254; Rose v. Lundy, 455 U.S. 509, 510, 515-516, 520 (1982); O'Sullivan v. Boerckel, 526 .S. 838, 89-840 (1999); Duncan v. Heny, 513 U.S. 364, 65-366 (1995); Anderson v. Harless, 459 U.S. 4, 6 (1982).)

II. FOR THE PURPOSE OF THIS PETITION AND JUDICIAL ECONOMY,

-8-

PETITIONER ADOPTS AND INCORPORATES BY REFERENCE AS
THOUGH FULLY SET FORTH HEREIN, THE MEMORANDUM OF POINTS AND
AUTHORITIES SET FOURTH IN EXHIBITS A, PETITION FOR REVIEW
TO THE CALIFORNIA SUPREME COURT IN CASE NO. S145210 AND
EXHIBIT B, WRIT OF HABEAS CORPUS TO THE CALIFORNIA SUPREME
COURT IN CASE NO. S159110.

   For the purpose of judicial economy, Petitioner hereby
incorporate reference as though fully set fourth herein, the
Memorandum of Points and Authorities presented to the California
Supreme Court in Petitioner's Petition for Review in Case No.
S145210, and Writ of Habeas Corpus Case No. S159110.
///
///
///
///

## C O N C L U S I O N

Accordingly, for the reason stated above, Petitioner submits he in entitled to the relief he seeks and as set fourth in this Petition. If this Court is not inclined to grant such relief, Petitioner requests an evidentiary hearing be granted.

Date: 6 / 20 / 08

**Respectfully submitted,**

by: ___Charles E Lyo_____
CHARLES EDWARD LYONS, II
Petitioner In Pro Se

///
///
///
///

-10-

Charles E. Lyons, V-76614
C.S.P. Solano (12-229)
P.O. Box, 4000
Vacaville, Ca. 95696


Petitioner **IN PRO SE**


### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| **CHARLES EDWARD LYONS, II,** ) | CASE No._____ |
| ) | |
|          **Petitioner,** ) | |
| ) | |
| ) | |
|    **-vs-** ) | |
| ) | |
| ) | |
| **D.K. SISTO, Warden,** ) | |
| a person having custody ) | |
| of petitione, ) | |
|        **Respondent.** ) | |
| _____) | |


### EXHIBITS IN SUPPORT THEREOF

EXHIBIT   A

IN THE

SUPREME COURT OF THE STATE OF CALIFORNIA


| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | No. |
| Plaintiff and Respondent, | ) ) ) | [Court of Appeal No. H028810] |
| v. | ) ) ) | |
| CHARLES EDWARD LYONS, | ) ) | |
| Defendant and Appellant. | ) ) ) | |


## PETITION FOR REVIEW

Petition for review to consider the decision
of the Court of Appeal of the
State of California, Sixth Appellate District,
in this action on June 20, 2006.


J. FRANK McCABE (SBN 48246)
Attorney at Law
500 Sansome Street, Suite 212
San Francisco, California 94111
Telephone:  (415) 397-1757

Counsel for Petitioner Lyons
By Appointment of the Court of
Appeal Under the Sixth District
Appellate Program's Independent-
Case System

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . i.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . iii.

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW . . . . . . . . . 2

WHY REVIEW SHOULD BE GRANTED . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 5

    A.    Underlying Offense . . . . . . . . . . . . . . . 5

    B.    Proceedings Following Appellant's Guilty Plea . . . . 5

BRIEF IN SUPPORT OF PETITION FOR REVIEW

    THIS PETITION SHOULD BE GRANTED
    BECAUSE APPELLANT'S FEDERAL AND
    STATE CONSTITUTIONAL RIGHTS TO
    EFFECTIVE ASSISTANCE OF COUNSEL
    AND DUE PROCESS WERE VIOLATED BY
    THE TRIAL COURT'S REFUSAL TO ALLOW
    APPELLANT TO WITHDRAW HIS GUILTY
    PLEA WHICH WAS NOT ENTERED
    VOLUNTARILY AND INTELLIGENTLY
    BECAUSE HIS COUNSEL MISADVISED HIM
    AS TO HIS MAXIMUM PUNISHMENT . . . . . . . . . . . . . . . 7

        A.    Factual Circumstances . . . . . . . . . . . 7

        B.    Appellant's Trial Counsel Materially
            Misrepresented Appellant's Maximum
            Sentence . . . . . . . . . . . . . . . . . . 8

        C.    Because of Counsel's Material
            Representation, Appellant's Guilty
            Plea Was Not Voluntary And Intelligent,
            And The Court's Refusal To Allow
            Appellant To Withdraw His Plea Violated
            His Constitutional Rights To Effective
            Assistance Of Counsel And Due Process
            Of Law . . . . . . . . . . . . . . . . . . . 10

D.    This Petition Should Be Granted And
      Appellant's Judgment Of Conviction
      Reversed Because The Misadvice Of
      Appellant's Trial Counsel Constituted
      Ineffective Assistance Of Counsel
      Which Prejudiced Appellant   . . . . . . . . . 13

CONCLUSION                . . . . . . . . . . . . . . . . . . 18

ii

## TABLE OF AUTHORITIES

### CASES

Boykin v. Alabama (1969) 395 U.S. 238 . . . . . . . . . . 11

Brady v. United States (1970) 397 U.S. 742 . . . . . . . . 12

In re Alvarez (1992) 2 Cal. 4th 924 . . . . . . . . . . . 13

In re Lawler (1979) 23 Cal. 3d 190 . . . . . . . . . . . 13

Kercheval v. United States (1927) 274 U.S. 220 . . . . . . 11

North Carolina v. Alford (1970) 400 U.S. 25 . . . . . . . 11

People v. Alvarez (1992) 2 Cal. 4th 924 . . . . . . . . . 14

People v. Chaffer (2003) 111 Cal. App.4th 1037 . . . . . . 10

People v. Beltran (2000) 82 Cal. App. 4th 693 . . . . . . 9

People v. Cruz (1974) 12 Cal. 3d 562 . . . . . . . . . . . 11

People v. Hall (2000) 83 Cal. App. 4th 1084 . . . . . . . 9

People v. Harrison (1989) 48 Cal. 3d 1321 . . . . . . . . 9

People v. Hawkins (1993) 15 Cal. App. 4th 1373 . . . . . . 9

People v. Howard (1987) 190 Cal. App. 3d 41 . . . . . . 16, 17

People v. Johnson (1995) 36 Cal. App. 4th 1351 . . . . . 12, 15

People v. McCary (1985) 166 Cal. App. 3d 1 . . . . . . . 12, 16

People v. Mickens (1995) 38 Cal. App. 4th 1557 . . . . . . 11

People v. Nam Van Huynh (1991) 229 Cal. App. 3d 1067 . . . . 12

People v. Reeves (2001) 91 Cal. App.4th 14 . . . . . . . . 10

People v. Ross (1994) 28 Cal. App.4th 1151 . . . . . . . . 10

People v. Superior Court (Giron) (1974) 11 Cal. 3d 793 . . . 11

People v. Weaver (2004) 118 Cal. App. 4th 131 . . . . . . 11

People v. Whittington (1977) 74 Cal. App.3d 806 . . . . . . 15

Wiggins v. Smith (2003) 539 U.S. 510 . . . . . . . . . . . 15

United States v. DeCoster (1973) 159 U.S.App.D.C. 326,
   487 F.2d 1197 . . . . . . . . . . . . . . . . . . . . . 15

iii

## STATUTES

Penal Code section 207  . . . . . . . . . . . . . . . . . . 3, 8

Penal Code section 236  . . . . . . . . . . . . . . . . . . 3

Penal Code section 237  . . . . . . . . . . . . . . . . . . 3

Penal Code section 243  . . . . . . . . . . . . . . . . . . 9

Penal Code section 273.5 . . . . . . . . . . . . . . . . . 10

Penal Code section 654  . . . . . . . . . . . . . . . . 9, 10

Penal Code section 667  . . . . . . . . . . . . . . . . . . 3

Penal Code section 667.5 . . . . . . . . . . . . . . . . . 3

Penal Code section 1018 . . . . . . . . . . . . . . . . . 11

Penal Code section 1192.7 . . . . . . . . . . . . . . . . . 3

Penal Code section 1203 . . . . . . . . . . . . . . . . . . 3

Penal Code section 12022.7 . . . . . . . . . . . . . . . 3, 9

Penal Code section 23222  . . . . . . . . . . . . . . . . . 3

Vehicle Code section 2800.3. . . . . . . . . . 3, 8, 9, 10

Vehicle Code section 14601.1 . . . . . . . . . . . . . . . 3

## SECONDARY AUTHORITY

ABA Model Rules of Professional Conduct, Rule 1.4(a) (1996) . 14

iv

IN THE

SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | No. |
| Plaintiff and Respondent, | ) ) ) | [Court of Appeal No. H028810] |
| v. | ) ) | |
| CHARLES EDWARD LYONS, | ) ) | |
| Defendant and Appellant. | ) ) ) | |

## PETITION FOR REVIEW

   To the Honorable Ronald M. George, Chief Justice, and
to The Honorable Justices of the Supreme Court of the State of
California:

   Pursuant to Rule 29, California Rules of Court, Charles
Edward Lyons, petitioner in this matter, respectfully petitions
this Honorable Court for review of the decision rendered by the
Court of Appeal of the State of California, Sixth Appellate
District, in this action, filed in said Court of Appeal on
June 20, 2006, affirming his judgment of conviction.  A copy of
the unpublished opinion is attached to this petition as
Appendix A.  No petition for rehearing was filed.

1

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the petition should be granted because appellant's federal and state constitutional rights to effective assistance of counsel and due process were violated by the trial court's refusal to allow appellant to withdraw his guilty plea which was not entered voluntarily and intelligently because his counsel misadvised him as to his maximum punishment.

## WHY REVIEW SHOULD BE GRANTED

This case presents an issue of state and federal constitutional magnitude which provides a compelling reason for granting review.  The issue raised in this petition is also presented to this Court so that petitioner shall have exhausted state remedies in the event that petitioner does not receive a favorable ruling on this claim in this Court and chooses to seek relief in federal court.

2

## STATEMENT OF THE CASE

Appellant Charles Edward Lyons was charged in a five-count information filed in Santa Clara County Superior Court. (CT 36-41.)  Count one charged appellant with eluding a police officer and causing serious bodily injury on January 21, 2004, in violation of Vehicle Code section 2800.3.  Count two alleged that appellant forcibly kidnapped Vanessa Valles on the same date in violation of Penal Code section 207, subd. (a).  Count three alleged false imprisonment of Vanessa Valles on the same date in violation of Penal Code section 236-237.  Great bodily injury enhancements within the meaning of sections 12022.7, subd. (a) and 1203, subd. (e)(3) were alleged as to counts one through three.[1]

Count four charged appellant with driving on a suspended license in violation of Vehicle Code section 14601.1, subd. (a), a misdemeanor, and count five charged appellant with another misdemeanor, possession of marijuana while driving, in violation of Penal Code section 23222, subd. (b).

The information alleged one prior conviction within the meaning of section 667, subd. (a), one prior conviction within the meaning of sections 667, subd. (b) and 1192.7, subd. (c), and three prior convictions within the meaning of section 667.5, subd. (b).

---

[1]    All references are to the California Penal Code unless otherwise specified.

3

On July 14, 2005, appellant pled guilty to counts one, three and five and admitted the enhancements.  Counts two and four were dismissed.  (CT 148; RT 43-57.)  Appellant discharged his retained attorney and, represented by new counsel, moved to withdraw his guilty plea.  (CT 159, et seq.)  Following an evidentiary hearing on December 23, 2004 (CT 206) the Hon. Linda Condron denied appellant's motion.  (CT 209-211.)

On January 13, 2005, appellant filed a statement in mitigation of sentence and moved to set aside his prior strike conviction.  (CT 213, et seq.)  Following an evidentiary hearing on April 7, 2005, the court denied that motion.  (RT 271-274.)

On April 21, the court sentenced appellant to a total prison term of fifteen years.  (CT 366-367; RT 279-284.)  On June 20, 2006, the court of appeal affirmed the order denying appellant's motion to withdraw his plea.  (Appendix A.)

4

## STATEMENT OF FACTS

A.    Underlying Offense.

As appellant entered a plea of guilty and there was no trial, this factual summary is based primarily upon the transcript of the preliminary hearing:

About 9 p.m. on January 21, 2004, a CHP officer on a motorcycle activated his emergency lights, made a quick noise with his siren and attempted to stop a motorcycle for not having a rear license plate. (CT 35.)  The motorcycle was moving at about 15 mph at the time, but the driver of the motorcycle, who was later identified as appellant, immediately accelerated and drove at speeds at times in excess of 120 mph for approximately seven miles. (CT 5-8, 20.)  Eventually, the motorcycle sideswiped a vehicle as it was passing it. (CT 11.)  The passenger on the motorcycle, Vanessa Valles, told the officer that she had been yelling at appellant and trying to get off the motorcycle. (CT 12.)  She suffered multiple pelvic fractures as a result of the collision. (CT 15.)  Marijuana was found in appellant's pants pocket. (CT 11.)

B.    Proceedings Following Appellant's Guilty Plea.

Appellant entered a guilty plea to counts one, three and five of the information on July 14, 2004.  Appellant admitted the enhancement allegations.  Counts two and four were dismissed. (CT 148; RT 42-58.)

At appellant's next court appearance on September 30, he advised the court that, one or two days after entry of his guilty plea, he contacted his attorney, Melvin Emerich, and told him that he wanted to withdraw his plea. (RT 72-74.) He told the court he wanted another lawyer to make that motion. On October 1, the court found there was a conflict of interest between appellant and attorney Emerich, and allowed appellant a court-appointed attorney. (RT 78-79.)

Appellant's new counsel filed a motion to withdraw appellant's guilty plea on December 2. (CT 164-169.) In a declaration in support of the motion, appellant stated that attorney Emerich had explained to him that his maximum exposure, if he went to trial, was 30 years 4 months imprisonment. Had he known that his maximum exposure was only 26 years 8 months, he would never have agreed to give up his right to a jury trial. He "would have definitely taken my chances at trial." (CT 168-169.)

Following an evidentiary hearing on December 23, 2004, the court denied the motion in a written decision filed on January 7, 2005. (CT 209-212.)

Appellant filed a _Romero_ motion to strike his prior serious felony conviction on January 13. (CT 213-226; 238-362.) Following an evidentiary hearing on April 7, 2005, the court denied the motion on April 21 and sentenced appellant to a term of fifteen years imprisonment. (RT 271-284.)

6

BRIEF IN SUPPORT OF PETITION FOR REVIEW

THIS PETITION SHOULD BE GRANTED
BECAUSE APPELLANT'S FEDERAL AND
STATE CONSTITUTIONAL RIGHTS TO
EFFECTIVE ASSISTANCE OF COUNSEL
AND DUE PROCESS WERE VIOLATED BY
THE TRIAL COURT'S REFUSAL TO ALLOW
APPELLANT TO WITHDRAW HIS GUILTY
PLEA WHICH WAS NOT ENTERED
VOLUNTARILY AND INTELLIGENTLY
BECAUSE HIS COUNSEL MISADVISED HIM
AS TO HIS MAXIMUM PUNISHMENT

A.   Factual Circumstances.

In appellant's declaration in support of his motion to

withdraw his plea, he declared that, before he pled guilty, his

lawyer explained that if he proceeded to trial, his "maximum

exposure was 30 years and 4 months."[2]  The attorney, Melvin

Emerich, never explained how long he would have to serve or how

long he would be on parole.  He said that, under the offered plea

bargain, the maximum sentence would be 22 years and 4 months.

(CT 169.)  Appellant added that, if he had known that his maximum

exposure was only 26 years 8 months if he had been convicted of

all charges, he would never have agreed to give up his rights to

a jury trial.  (Id.)

At the hearing on appellant's motion to withdraw his

plea, appellant noted that originally attorney Emerich had told

_____

[2]   In fact, on the day prior to the entry of appellant's
plea, the trial court on the record advised appellant
that his exposure was 30 years 4 months which would be
reduced to 22 years 4 months if he pled guilty.  (ART
2.)

7

him that his maximum exposure was thirty-four years and then
later said it was in the thirty year range.  (RT 96-97.)
Appellant told his lawyer that he was adamant that he was going
to trial because he felt he was innocent of the charges against
him. (RT 97.)  Appellant testified that if he had known that his
maximum possible sentence was 26 years 8 months, or even if it
were 29 years 8 months, he would not have pled guilty.  (RT 103.)

Attorney Emerich testified at the hearing that it was
possible that he initially told appellant that he could face over
thirty-four years in prison, and ultimately told appellant that
his maximum time was 30 years 4 months.  (RT 118-119, 127-128.)
He believed that under the plea bargain appellant's maximum time
was being reduced by eight years.  (RT 129-130.)

> **B.**  <u>Appellant's Trial Counsel Materially</u>
> <u>Misrepresented Appellant's Maximum</u>
> <u>Sentence</u>.

Both the prosecutor and appellant's newly-appointed
counsel agreed that appellant's maximum exposure if convicted of
all charges against him was less than the 30 years 4 months
calculated by attorney Emerich.  Defense counsel calculated the
maximum sentence at 26 years 8 months (CT 162-164), and this is
correct.  If convicted of Penal Code section 207, subd. (a), in
count two of the information, he could be sentenced to 8 years
imprisonment, doubled under the Three Strikes Law, plus one-third
of the mid-term on Vehicle Code section 2800.3 or two-years eight
months, plus one 5-year prior and three one-year priors, for a

8

total sentence of 16 years + 2 yrs 8 mos. + 5 + 3 years = 26 years 8 months.

Contrary to the calculation of the district attorney and the trial court (CT 212), appellant cannot be sentenced under a GBI enhancement and also under section 2800.3 because the injury to the rider on appellant's motorcycle is the basis for both enhancements, and section 654 precludes punishment under more than one statutory provision.  (See People v. Beltran (2000) 82 Cal.App.4th 693.)  "Serious bodily injury" in section 243 and "great bodily injury" in section 12022.7 have substantially the same meaning.  (People v. Hawkins (1993) 15 Cal.App.4th 1373, 1375.)

The purpose of section 654 is "to insure that the defendant's punishment will be commensurate with his criminal liability."  (People v. Hall (2000) 83 Cal.App.4th 1084, 1088.) Thus, a defendant may not receive multiple sentences where a single criminal act results in violation of more than one criminal statute.  (People v. Harrison (1989) 48 Cal.3d 1321, 335.)  Similarly, multiple punishment is barred where the defendant violates multiple criminal statutes as a means of accomplishing one objective, and the defendant harbored a single intent.  (Ibid.)  Here, appellant had one criminal intent or objective and cannot receive multiple punishments.

The law is settled that section 654 must be applied to multiple GBI enhancements when there is a single victim.  The

9

court in <u>People</u> v. <u>Reeves</u> (2001) 91 Cal.App.4th 14, 54-57, not
only applied section 654 to multiple GBI enhancements because the
statute proscribes all attempts to impose multiple punishments
for the same act, but also cited several other appellate
decisions which have applied section 654 to multiple
enhancements.  In fact, application of 654 in these circumstances
"is now well-accepted."  (<u>People</u> v. <u>Ross</u> (1994) 28 Cal.App.4th
1151, 1157  n. 7.)

The court below in writing that "the general
applicability of section 654 to enhancements [is] an unsettled
question" (Appendix A, p. 22), relies upon <u>People</u> v. <u>Chaffer</u>
(2003) 111 Cal.App.4th 1037, but that reliance is misplaced.  In
that case, the court specifically ruled that GBI was not an
element of the offense involved therein (section 273.5), while in
the case at bench GBI of course is an element of Vehicle Code
section 2800.3.  Thus, in <u>Chaffer</u> there was no section 654
problem, but there is a problem here.

C.    <u>Because of Counsel's Material
Representation, Appellant's Guilty
Plea Was Not Voluntary And Intelligent,
And The Court's Refusal To Allow
Appellant To Withdraw His Plea Violated
His Constitutional Rights To Effective
Assistance Of Counsel And Due Process
Of Law</u>.

The United States Supreme Court long ago noted that
"courts are careful that a plea of guilty shall not be accepted
unless made voluntarily and with full understanding of the

10

consequences." (<u>Kercheval</u> v. <u>United States</u> (1927) 274 U.S. 220, 223.) The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (<u>North Carolina</u> v. <u>Alford</u> (1970) 400 U.S. 25, 31; see <u>Boykin</u> v. <u>Alabama</u> (1969) 395 U.S. 238, 242.)

A defendant who seeks to withdraw his guilty plea may do so before judgment has been entered upon a showing of good cause. (<u>People</u> v. <u>Weaver</u> (2004) 118 Cal.App.4th 131, 145.) "Section 1018 provides that ... 'On application of the defendant at any time before judgment ... the court may, ... for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.' Good cause must be shown for such a withdrawal, based on clear and convincing evidence. [Citation.]" (<u>People</u> v. <u>Mickens</u> (1995) 38 Cal.App.4th 1557, 1561.)

By its very language, section 1018 shall be "liberally construed to ... promote justice." Good cause is shown if the defendant did not exercise free judgment in entering into the plea. (<u>People</u> v. <u>Cruz</u> (1974) 12 Cal.3d 562, 566.) Courts have allowed a defendant to withdraw his plea "for mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment." (<u>People</u> v. <u>Superior Court (Giron)</u> (1974) 11 Cal.3d 793, 797.)

Appellant Lyons established good cause for withdrawal of his plea in that he was misadvised by his attorney, and also

11

by the court, as to the maximum sentence he would be facing if he went to trial.

To be valid, a guilty plea must be based on a defendant's full awareness of the relevant circumstances and the likely consequences of his actions including "the actual value of any commitments made to him by the court, prosecutor or his own counsel." (Brady v. United States (1970) 397 U.S. 742, 748. See also People v. Johnson (1995) 36 Cal.App.4th 1351, 1356.) A plea cannot stand on a serious misapprehension of the penal consequences of a plea bargain. (People v. McCary (1985) 166 Cal.App.3d 1, 8-9.)

The case of People v. Nam Van Huynh (1991) 229 Cal.App.3d 1067, is closely analogous. There, the court issued an order to show cause why a habeas corpus petition should not be granted on the ground that petitioner's counsel misadvised petitioner as to the minimum time he would be required to serve before he was eligible for parole. Petitioner agreed to a court trial in exchange for eliminating exposure to more serious offenses. His counsel informed him that he would be eligible for parole in approximately seven years while his correct eligibility date was substantially longer. Petitioner declared that he would not have agreed to waive jury trial had he been advised that he risked over eleven years in prison if convicted. The court of appeal ruled, "we regard this as sufficient to establish 'a prima facie case for relief on habeas corpus' due to prejudice

12

resulting from defense counsel's misadvice." (<u>Id</u>. at p. 1083,

quoting from <u>In re Lawler</u> (1979) 23 Cal.3d 190, 194.)

      "The pleading -- and plea bargaining -- stage of a

criminal proceeding is a critical stage in the criminal process

at which a defendant is entitled to the effective assistance of

counsel guaranteed by the federal and California Constitutions."

(<u>In re Alvarez</u> (1992) 2 Cal.4th 924, 933.)  "Although [the

decision as to whether to plead guilty pursuant to a plea bargain

is a decision ultimately made by the defendant], it is the

attorney, not the client, who is particularly qualified to make

an informed evaluation of a proffered plea bargain.  The

defendant can be expected to rely on counsel's independent

evaluation of the charges, applicable law, and evidence, and of

the risks and probable outcome of trial.  [Citations.]"  (<u>Ibid</u>.)

      Here, appellant Lyons relied upon his attorney's

inaccurate evaluation of the maximum sentence he was facing and,

as a result, entered into his guilty plea.  As a result of the

misadvice, he should be permitted to withdraw his plea.

    D.   <u>This Petition Should Be Granted And
        Appellant's Judgment Of Conviction
        Reversed Because The Misadvice Of
        Appellant's Trial Counsel Constituted
        Ineffective Assistance Of Counsel
        Which Prejudiced Appellant</u>.

    Appellant's counsel admittedly erred in advising

appellant that his maximum exposure should he go to trial was

thirty years four months imprisonment.

13

The appellate court below stated that "an attorney's simple misjudgment as to a sentence a defendant may receive upon conviction ... will not, without more, give rise to a claim of ineffective assistance of counsel." (Appendix A., p. 25.) However, appellant submits that competent counsel first should have carefully researched the law. (See, e.g., People v. Alvarez (1992) 2 Cal.4th 924, 933.) If, following that research, he had a doubt as to appellant's maximum exposure, he should have attempted to obtain a ruling from the trial court. If that was not an available option, he should have fully and completely advised appellant of the results of his research and his opinion instead of simply, and erroneously, telling appellant that his maximum exposure was 30 years 4 months. (See, e.g., ABA Model Rules of Professional Conduct, Rule 1.4(a) (1996).)

An attorney is not adequately performing his constitutionally-mandated function if he does not properly explain the law to his client. The Commentary to Standard 14-3.2(a) of the American Bar Association's Standards for Criminal Justice - Pleas of Guilty states:

> By necessity, defense counsel is charged with the primary responsibility to ensure that the defendant fully understands the plea that is being offered, including all terms of the sentence that could be imposed and other ramifications of that plea.

Similarly, the ABA Model Rules of Professional Conduct, Rule 1.4(a) (1996) states that a "lawyer shall explain a matter

14

to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[3]

Counsel's material misrepresentation prejudiced appellant and requires that this Court grant this petition and reverse his judgment of conviction because there is a reasonable probability that, absent counsel's error, the result of the case would have been different.  (Strickland v. Washington, supra, 466 U.S. at p. 687; People v. Ledesma, supra, 43 Cal.3d at pp. 215-218.)

Specifically, to demonstrate the prejudicial character of ineffectiveness of counsel in the context of the entry of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  (Hill v. Lockhart, supra, 474 U.S. at p. 59; see Strickland v. Washington, supra, 466 U.S. at p. 695.)

As the court said in Johnson, supra:

> In the present case, prejudice can be measured by determining whether counsel's acts or omissions adversely affected defendant's ability to knowingly,

---

[3]  The American Bar Association's Standards have been referred to as guides determining what is reasonable (Wiggins v. Smith (2003) 539 U.S. 510) and as "the legal profession's own articulation of guidelines for the defense of criminal cases" which "counsel should be guided by."  (People v. Whittington (1977) 74 Cal.App.3d 806, 818 n. 6, quoting United States v. DeCoster (1973) 159 U.S.App.D.C. 326, 332-333, 487 F.2d 1197, 1203-1204.)

15

intelligently and voluntarily decide to enter
a plea of guilty.  In this respect, the
standard applicable to the withdrawal of a
guilty plea is helpful.  In other words, if
as a result of counsel's acts or omissions,
it fairly appears defendant entered his plea
under the influence of 'mistake, ignorance or
inadvertence or any other fact overreaching
defendant's free and clear judgment' such as
would justify the withdrawal of his plea, he
was ineffectively represented by counsel."
(People v. McCary, supra, 166 Cal.App.3d at
p. 10.)

(36 Cal.App. 4th at p. 1357.)

This test is met in the case at bench.  Appellant Lyons

both declared in his declaration in support of his motion to

withdraw his plea and testified at the evidentiary hearing on

that motion that he would not have pled guilty and would have

gone to trial had he known that his maximum exposure was not 30

years 4 months which his lawyer had advised him.  (CT 168-169; RT

96-97, 103.)

Appellant's declaration and testimony establish a

"reasonable probability" that, but for trial counsel's critical

misrepresentation, appellant would not have pleaded guilty and

would have insisted on going to trial.  (Hill v. Lockhart, supra,

474 U.S. at p. 59.)  The "reasonable probability" is not a test

which requires the defendant to show "that counsel's deficient

conduct more likely than not altered the outcome of the case....

A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  (Strickland, supra, at pp. 693-694;

see also People v. Howard (1987) 190 Cal.App.3d 41, 48.)  "In

16

statistical terms," the <u>Howard</u> court put it, "we believe <u>Strickland</u> requires a significant but something-less-than-50 percent likelihood of a more favorable verdict." (<u>Id</u>., at p. 48.)

Translating this holding to the <u>Hill</u> standard for assessing prejudice in cases involving ineffective assistance of counsel during plea proceedings would require "a significant but something-less-than-50 per cent likelihood" (<u>Howard</u>, <u>supra</u>) that "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." (<u>Hill</u>, <u>supra</u>.) Appellant submits that this standard has been met, and respectfully urges this Court to reverse his judgment of conviction and to remand to the superior court to allow him to withdraw his guilty plea.

17

CONCLUSION

For the foregoing reasons, petitioner Charles Edward Lyons respectfully requests that review be granted in this matter.

DATED:  July 19, 2006.

Respectfully submitted,

BY  FRANK McCABE
Counsel for Appellant Lyons
By Appointment of the Court of
Appeal Under the Sixth District
Appellate Program's Independent-
Case System

18

Court of Appeal, Sixth Appellate District - No. H028810
**S145210**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CHARLES EDWARD LYONS, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
**FILED**

SEP 2 7 2006

~~Frederick K. Ohlrich~~ Clerk

~~DEPUTY~~

**GEORGE**

Chief Justice

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

**F I L E D**

Court of Appeal - Sixth App. Dist.

JUN 2 0 2006

MICHAEL J. YERLY, Clerk

DEPUTY

|   |   |
|---|---|
| THE PEOPLE, | H028810 |
| Plaintiff and Respondent, | (Santa Clara County Super.Ct.No. CC440907) |
| v. |   |
| CHARLES EDWARD LYONS, |   |
| Defendant and Appellant. |   |

Defendant Charles Edward Lyons appeals from the trial court's order denying his motion under Penal Code section 1018[1] to withdraw his guilty plea to various charges. The charges stemmed from Lyons evading a police officer while on a motorcycle and causing great bodily injury to his unwitting passenger when the pursuit ended in a collision.  Defendant's primary contention below was that his counsel had misadvised him concerning the maximum sentence were he to have been convicted of all counts charged, with all enhancements found true, and he would not have pleaded guilty had he known his true, lesser exposure.

The trial court denied defendant's motion, finding that he had not shown good cause.  The court concluded that defendant's testimony as to why he had pleaded guilty

---

[1] All further unspecified statutory references are to the Penal Code.

APPENDIX A

E X H I B I T   B

Name Charles Edward Lyons, II

Address C.S.P. Solano

P.O. Box, 40000

Vacaville, Ca. 95696

CDC or ID Number V-76614

MC-275

☐ **COPY**

**SUPREME COURT**
**FILED**

DEC 14 2007

Frederick K. Ohlrich Clerk

Deputy

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

(Court)

PETITION FOR WRIT OF HABEAS CORPUS

---

Charles Edward Lyons, II

Petitioner

vs.

People of the state of California,

Respondent

No. **S159110**

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

MC-275

This petition concerns:

[x] A conviction   [ ] Parole

[ ] A sentence   [ ] Credits

[ ] Jail or prison conditions   [ ] Prison discipline

[ ] Other *(specify):* _____

1. Your name: Charles E. Lyons, II _____

2. Where are you incarcerated? California State Prison Solano _____

3. Why are you in custody? [X] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Felony Evading w/injury, Felony false imprisonment w/injury, Possession of marijuana, kidnapping driving on a suspended license.

b. Penal or other code sections: V.C § 2800.3, P.C. § 236/237 w/§12022.7 & 1203, sub. (e)(3). V.C.§ 23222(b)

c. Name and location of sentencing or committing court: The Superior Court Of California, In The County Of Santa Clara

d. Case number: CC440907

e. Date convicted or committed: 1/21/04

f. Date sentenced: 4/21/05

g. Length of sentence: 15 Yrs.

h. When do you expect to be released? 10/21/2014

i. Were you represented by counsel in the trial court? [X] Yes. [ ] No. If yes, state the attorney's name and address:

Melvin L. Emerich (S.B.N. 118180), Panteha Ebrahimi (S.B.N. 200968) Offices of the Public Defender
4600 El Camino Rl. Suite 205   120 W. Mission St., San Jose, Ca. 95110 Ph. 408-299-7180
Los Altos, Ca. 94022 Ph. 650-949-4377

4. What was the LAST plea you entered? *(check one)*

[ ] Not guilty [X] Guilty [ ] Nolo Contendere [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[ ] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

6. GROUNDS FOR RELIEF                                                    MC–275
   Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal
   enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.
   For additional grounds, make copies of page four and number the additional grounds in order.)*

   Petitioner contends Ineffective Assistance of Trial Counsel under Strickland v. Washington and the

   Sixth Amendments right to effective representation by Counsel.

   a. Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon
      which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For
      example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed
      to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain*
      (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place
      *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

      1) Counsel failure to investigate facts of the crime and law:

      Counsel and his representation failed to interview witnesses that could undermine the District

      Attorneys case of evading. One Kevin Dodd (Ph. 408-461-1154), Christiana Moreno, Vanessa Valles, who

      would have provided both mitigating and exculpatory testimony (refer to Exhibit A,B,C.) this

      prejudiced petitioners Sixth Amendment right to effective assistance of trial counsel.

      2) Counsel failure to secure and present defense witnesses at the time of trial on 7/13/04:

      Due to counsels deficient performance by not calling the witnesses listed in Exhibit A,B, & C,

      petitioner was denied an affirmative defense which lead to counsel coercing petitioner to take a plea

      agreement when petitioner had a affirmative defense to the charges.

      3) Counsel's failures were at issue when the court noted counsels unpreparedness to handle the case

      at that time, (see Exhibit D Pg. 15, 16 Ln.6-9; Pg. 22 Ln. 27-28; Pg. 23 Ln. 1-23; Pg. 25 Ln. 1-22;

      Pg. 26 Ln. 1-3).

      4) Counsel and petitioner's conflict of interest rendered counsel ineffective, counsel was relieved
                                                                        Attached Pg. 3a
   b. Supporting cases, rules, or other authority (optional):
      *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary,
      attach an extra page.)*

      ainsworth v. Woodford, 268 F. 3d 868, 873-74 (9th Cir. 2001); Baker v. Barbo, 177 F. 3d 149, 154

      (3d Cir. 1999); Blankenship v. Johnson, 118 F.3d 312, 318 (5th Cir. 1997); Hill v. Lockhart, 474 U.S.

      52, 59 (1986); In re Mario Rocha 135 Cal. App. 4th 252; Kimmelman v. Morrison, 477 U.S. 365, 385

      (1986); McMann v. Richardson, 397 U.S. 759, 771 N.14 (1970); Murry v. Carrier, 477, 496 (1986); Attach Pg 3b

MC-275 [Rev. January 1, 2007]        **PETITION FOR WRIT OF HABEAS CORPUS**                    Page 3 of 6

Cont. Pg. 3, 6a

as counsel (see Exhibit E Pg. 77 Ln. 14-28, Pg. 78 Ln. 1-8) due to 1,2, & 3 above-mentioned and

coercion to accept a plea when petitioner had a meritorious defense, counsel representation fell

below a standard of competent representation.

5) Counsel mishandling of attorney client work product discovery:

Petitioner was appointed counsel to represent him (Panteha Ebrahimi) and relieved counsel was ordered

to turn over all work product to the Public defender's Office, (see Exhibit F & F1) attorney Panteha

Ebrahimi only received part of the files. A very crucial portion of the file was missing.

Pg. 3a of 6

Cont. Pg. 3, 6b

Pavel v. Hollins, 291 F. 3d 210, 216-18, 228 (2d Cir. 2001); People v. Jackson 28 Cal. 3d 264, 289;
Roe v. Flores-Oetega, 528 U.S. 470, 483-84 (2000); Smith v. Robbins, 528 U.S. 259, 287 (2000); Stouffer
v. Reynolds, 214 F. 3d 1231, 1234-35 (10th Cir. 2000); Strickland v. Washington, 466 U.S. at 690;
Tejeda v. Dubois, 142 F. 3d 18, 22-25 (1st Cir. 1998); U.S. V. Cronic, 466 U.S. 648, 665 (1984)

7. Ground 2 or Ground _____ (if applicable):                                    MC–275

_____

_____

_____

_____

a. Supporting facts.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

MC–275

8. Did you appeal from the conviction, sentence, or commitment?    [X] Yes.    [ ] No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      Court of Appeal in the Sixth District

   b. Result   Denied                              c. Date of decision:   6/20/06

   d. Case number or citation of opinion, if known:   H028810

   e. Issues raised: (1)      See Attached Exhibit G

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?   [X] Yes.   [ ] No. If yes, state the attorney's name and address, if known:

      J. Frank McCabe (S.B.N. 48246) 500 Sansome St., Suite 212, San Francisco, Ca. 94111(Ph. 415–397–1757)

9. Did you seek review in the California Supreme Court?   [X] Yes   [ ] No.   If yes, give the following information:

   a. Result   Denied                              b. Date of decision:   9/27/06

   c. Case number or citation of opinion, if known:   S145210

   d. Issues raised: (1)      See Attached Exhibit G

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:

    My Allellate attorney said that my issues was limited on direct appeal and the rest was

    outside the record so he would not file a writ of Habeas Corpus on my behalf.

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
       administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
       52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
       review:

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available?   [ ] Yes.   [ ] No.
       *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 2007]          **PETITION FOR WRIT OF HABEAS CORPUS**                    Page 5 of 6

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction,    MC–275
commitment, or issue in any court?  ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13. a.  (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

b.  (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949)
34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☒ Yes.  ☐ No. If yes, explain:

Civil Law suit stemming from my arrest in this case at issue, Case # 1-06-CV-057281 Filed in The Superior
Court of California, In the County of Santa Clara.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California
that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief,
and as to those matters, I believe them to be true.

Date: _____    _____
                                        (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 2007]            **PETITION FOR WRIT OF HABEAS CORPUS**            Page 6 of 6

# EXHIBIT COVER PAGE:

Exhibit:    A

Description of this exhibit:  Investigative interview of Kevin Dodd

Number of pages of this exhibit:   4    pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

___X___State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other:  _____

ORIGINAL

# KLOPPER INVESTIGATIONS

Investigative and Legal Assistance Services

P.O. Box 28038
San Jose, CA 95159

Phone: (408) 246-8982
FAX: (408) 246-1767

May 10th, 2004


Client:   Charles Lyons
          04-638

Re:    Interview of Kevin Dodd


**April 29th, 2004**

On this date I, investigator Joseph Kral conducted an interview of Kevin Dodd. I introduced myself and explained to Mr. Dodd that I was working for Mr. Charles Lyons. I explained to Mr. Dodd that I did not work for the District Attorney's office and I was not a police officer. I asked him if he would talk to me about the police chase that Mr. Lyons was involved with. He agreed.

I asked Mr. Dodd how long he has known Charles. Mr. Dodd said that he has known "Chuckie" for about 3 ½ years. I asked him how they met. He said they met through friends, motorcycling buddies. I asked Mr. Dodd if he felt that he knew Charles well. He said yes. He said they ride together and Chuckie knows his parents. Mr. Dodd said that occasionally Chuckie leaves his motorcycle at his house while he is working.

I asked Mr. Dodd to tell me everything that happened the day of the chase. Mr. Dodd said that he met everyone at Carl's Jr. restaurant at White Rd. and Quimby Rd. I asked Mr. Dodd who he met there. He said it was Chuckie, Tiana, Vanessa and TJ. Mr. Dodd said that they were outside talking. He said that Vanessa wanted to ride with TJ.

State Lic: PI13132
Member: CALI, NALI, WAD, WIN & GIN
Assoc. Member: CACJ
www.klopperpi.com

Client: Charles Lyons
Re: Interview of Kevin Dodd
May 10th, 2004
Page 2

Mr. Dodd said that suddenly she "…just went over and jumped on." to the back of Chuckie's motorcycle. Mr. Dodd said that she has all her own equipment, i.e. helmet, jacket, gloves, etc., but does not have a motorcycle. He said that they went riding through the hills and came down Blossom Hill Rd. towards Santa Teresa Blvd. He said that they were going to the bowling alley.

Mr. Dodd explained to me that Chuckie had a problem with some guys. He said that Chuckie was seeing this woman, a black woman, whose boyfriend was in jail. He told me that she didn't want to see this guy anymore; she wanted to be with Chuckie. Mr. Dodd said that one day some guys showed up to confront Chuckie. He said they "cold cocked him," then left. Mr. Dodd said that Chuckie was unconscious for about 15 minutes. I asked Mr. Dodd where this incident occurred. He said it was at the girl's house. I asked him if he knew the address. He said that he thinks it was on 10th St., but that's all he can remember. I asked Mr. Dodd how long ago this incident occurred. He said that it was not more than six months ago. I asked Mr. Dodd how many guys were there. He said three, and they were driving a white SUV. I asked him if he had seen them since. He said no. Mr. Dodd said that Chuckie had seen them at a club in downtown, but he didn't say anything to him about it until after they had left.

I asked Mr. Dodd if he had seen the white SUV when they were going to the bowling alley. Mr. Dodd said that he did see a white SUV, but did not see who was inside. Mr. Dodd said that at the intersection of Blossom Hill Rd. and Santa Teresa Blvd., the SUV went straight and they turned right. Mr. Dodd said that after turning onto

Client: Charles Lyons
Re: Interview of Kevin Dodd
May 10th, 2004
Page 3

northbound Santa Teresa, he moved towards the left lane in preparation for a left turn towards the bowling alley. He said that Chuckie "just took off" and went straight. Mr. Dodd said that about 45 seconds later he saw a CHP motorcycle officer go by. I asked Mr. Dodd if he could tell me the make and model of the SUV. He said that he thought it might be an Expedition, but he could not be sure.

I asked Mr. Dodd if he could tell me how far ahead Charles was when he saw the CHP officer go by. He said the Chuckie was some distance ahead, under the highway 85 overpass when he saw the CHP officer. I asked Mr. Dodd if the officer had his lights and siren going. He said his lights were on, but no siren.

I asked Mr. Dodd if he could tell me about an incident that occurred at a nightclub in downtown San Jose. Mr. Dodd said that he was with Chuckie at a nightclub and Chuckie asked to borrow his truck keys. He said that Chuckie went and got the truck and then told him to get in because they were leaving. Mr. Dodd said that after they had left Chuckie said that he had seen the three guys that attacked him at the club. I asked Mr. Dodd if he had seen them. He said no. I asked Mr. Dodd if anything had happened to Charles at the club. He said he didn't see anything. He said that Chuckie didn't tell him he had seen the guys until after they had left.

I asked Mr. Dodd to tell me about Vanessa. Mr. Dodd said that he has known her about as long as Chuckie has known her. I asked him how long that was. He said about 6 months. I asked Mr. Dodd what was his impression of her. He said that he really didn't see her a lot. He said that she always wanted to ride. He said that she would "…ride with

Client: Charles Lyons
Re: Interview of Kevin Dodd
May 10th, 2004
Page 4


whomever." I asked Mr. Dodd if she had ever ridden with him. He said yes, once, for

about ten minutes.

I asked Mr. Dodd if he has seen the white SUV at any time since. He said no. I

asked Mr. Dodd if he could identify the three guys that attacked Charles if he saw them

again. He said that he doesn't remember exactly what they look like. I asked him what

race he thought they were. He said, "light skin Hispanic." I asked Mr. Dodd if Charles

had seen these three guys at any other time. He said no.



Respectfully submitted,


Joseph L. Kral

# EXHIBIT COVER PAGE:

Exhibit: ___B_____

Description of this exhibit: Investigative interview of Christiana Moreno

Number of pages of this exhibit:___5____pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

__X__ State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

**KLOPPER INVESTIGATIONS** **ORIGINAL**

INVESTIGATIVE AND LEGAL ASSISTANCE SERVICES

P.O. BOX 28038
SAN JOSE, CA 95159

PHONE: 408-246-8982
FAX:    408-246-1767

June 8, 2004

COPY

Client:  Charles Lyons
         04-638

Re:   Christiana Moreno aka Tiana

**June 8, 2004**

On this date I, investigator Sheila Klopper, interviewed Christiana aka Tiana Moreno. I identified myself to Tiana and told her I was working on behalf of Charles "Chuckie" Lyons; Tiana was receptive to talking to me.

Tiana said she met Chuckie through friends who all ride motorcycles. She further told me that she is a close friend of Vanessa Valles though they don't talk much since the accident. She said she usually rides with Kevin Dodd when the group goes riding and this was before she ever knew Chuckie. Vanessa would ride with whomever they were with as they both loved to ride motorcycles. Tiana said that all in all, she has known Chuckie about five to six months and that on this particular night, Vanessa chose to ride with Chuckie instead of TJ, another friend that was with them.

According to Tiana, they had all been together the night before and just did fun stuff to include going to a drive in. On other occasions they would go on rides, out to eat, go to friends' homes, play pool or go bowling. On this particular night, Tiana said that Vanessa picked her up in the car and they went to Carl's Jr., and met up with TJ, Kevin and Chuckie. They ate and

Charles Lyons
Re: Christiana Moreno
June 8, 2004
Page 2


talked a while then everyone left to go get gas in the motorcycles and then on to a friend of

Chuckie's or Kevin's. They went out to another gas station and returned to the friend's house,

shared a blunt of marijuana among six people and decided to go bowling. I asked Tiana if she

and Vanessa had any other drugs earlier in the evening and she said they did share a joint prior to

meeting up with the guys.

After the six shared the blunt of marijuana, they all went for a motorcycle ride. Vanessa

opted to ride with Chuckie, Tiana with Kevin and TJ rode alone. They went up off of Silver

Creek, then somewhere else, and then turned back around to go down Bernal, but Kevin decided

to go towards Oakridge to play pool. Tiana said that they had traveled west on Blossom Hill and

turned right on Santa Teresa Blvd towards the bowling alley. They were stopped at a light and

were in the left turn only lane. Chuckie and Vanessa were in the lead, TJ behind and to the left,

and she and Kevin behind them. Out of nowhere, Chuckie lifted his feet off the ground and took

off. About 10 seconds later, she saw a CHP on a motorcycle go by and that is when she saw the

flashing lights. She said she never heard a "chirp" of the siren.

Tiana said that Chuckie went through on a green light. She looked right and saw the CHP

motorcycle go past but never heard a siren, and only after it passed, did she see the flashing

lights. She said that she and Kevin and TJ turned into the AMC Bowling area, as they didn't

know what was going on. They tried to call Chuckie on the cell phone and just left messages.

About five to 10 minutes later, they heard sirens and Tiana said she tuned in to this as her father

had been killed on a motorcycle years before. TJ said to just wait and see if they came back.

Charles Lyons
Re: Christiana Moreno
June 8, 2004
Page 3

Tiana said they went to Starbuck's as it was a usual meeting place thinking Chuckie and

Vanessa might go there. They had some coffee and tried paging Chuckie. Then they went to a

pay phone and called the CHP office and were told to call again in an hour. They did call again

and found out that Chuckie had been arrested but weren't told anything about Vanessa or

hospitalization. About 2:00 AM Kevin got a call from Melissa, Chuckie's friend, saying that he

had been arrested and that Vanessa was in the hospital. She and Kevin started going to hospitals

looking for her. They first went to Kaiser Santa Theresa, then maybe O'Connor, then VMC.

Tiana said she had security go and get Vanessa's mom to bring her in.

Tiana said that Chuckie made it pretty obvious about not ever going to be pulled over and

that Vanessa was aware of that. I asked what that meant and she said that she had asked Chuckie

on a prior occasion, "Why no plate?" Chuckie's response was, "What for? I'm not going to get

pulled over." She said this was at a park and Vanessa was there and heard this.

Tiana said that this was the first time that Vanessa had ridden with Chuckie on his bike.

She said they had never seen Chuckie run from the police before.

I asked Tiana about Chuckie and Vanessa's relationship and she said they were just

friends. She said Chuckie flirts with everyone, but there was nothing sexual between the two of

them.

I asked Tiana if she knew that Vanessa was pregnant at the time and she said no and that

Vanessa just found out that night. Tiana said she tried talking Vanessa into having an abortion, as

she was too young, etc., but Vanessa said he wanted to keep the baby. Tiana said she stayed the

Charles Lyons
Re: Christiana Moreno
June 8, 2004
Page 4

night with Vanessa in the hospital and that Vanessa's mom came back in the morning and took her home.

Tiana said that before leaving the hospital the next morning however, a CHP officer got there to interview Vanessa. He came in and Vanessa told him how it happened. According to Tiana, the CHP officer got upset with Vanessa's version and accused her of trying to defend Chuckie. Tiana said the officer was pressuring Vanessa to change her version of how it happened. After the CHP officer left, they (Vanessa, Vanessa's mother, and Tiana) all discussed what the officer tried to do. They were upset that Chuckie didn't stop and let Vanessa off the motorcycle. Vanessa said she didn't know the police were even after them until they were on the freeway.

Tiana told me that it was about 10 seconds after she had seen Chuckie take off that she saw the CHP officer go by on the motorcycle.

I asked Tiana if they had been doing any wheelies that night and she said she didn't really recall. She said she thought TJ did one stunt. Chuckie was known for falling and they called him the "Crash Dummy." She said Vanessa didn't do any wheelies when with him, though she has done them before with others; just not that night.

Tiana said that the CHP officer did tell them that Chuckie was not a fire fighter. He told them he knew who Chuckie was and that they had been trying to catch him for a long time. Tiana said the CHP officer was really "pissed" and upset. He kept asking Vanessa how it happened and they saying, "Are you sure? Are you sure?" over and over. Tiana said she asked the CHP officer if they were right in pursuing with a passenger and that he said, "We are CHP and we make sure

Charles Lyons
Re: Christiana Moreno
June 8, 2004
Page 5

we catch them. It doesn't matter if they fall; one way or another we catch them." Tiana thought

that this also endangered Vanessa.

Tiana told me that riding motorcycles is fun and it is about speed. She said they have

gone to San Francisco on the freeway at 115-mph. She said they all know the possibility of

accidents and death, but she and Vanessa and their friends love to ride and knowingly take that

risk.

Tiana said she has talked to Chuckie since he has been incarcerated and that he told her I

would be contacting her. She said he has never tried to prep her testimony and that she made it

real clear to him that she would tell the truth.

I asked Tiana if Kevin had any priors and she said she didn't know.

I asked Tiana about seeing a white SUV that night and she said she never saw that. She

only knows from hearsay that Chuckie got hit in the face prior to that night in some type of

"drama," but doesn't know anything about a white SUV.

No other information was available at this time, but Tiana was receptive to further

contact.

Respectfully submitted,

Sheila J. Klopper

# EXHIBIT COVER PAGE:

Exhibit:    C

Description of this exhibit:  Investigative interview of Vanessa Valles

Number of pages of this exhibit:     7     pages

JURISDICTION:  (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

  X   State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: _____

# KLOPPER INVESTIGATIONS

Investigative and Legal Assistance Services

P.O. Box 28038
San Jose, CA 95159

Phone: (408) 246-8982
FAX: (408) 246-1767

May 28, 2004

Client: Charles Lyons
04-638

Re:    Vanessa Valle

**May 28, 2004**

On this date I, investigator Sheila Klopper, interviewed Vanessa Valle. Also present during the interview was Vanessa's mother Marilyn Sotelo. I identified myself to Vanessa and Marilyn and told them I was working on behalf of Charles Lyons; they were receptive to talking to me.

Vanessa told me that she had met Charles aka "Chuckie" at a Starbucks Coffee through a friend a couple of weeks before the accident. She said she and Chuckie were just in the beginning stages of being friends and there was no romantic involvement, even though he hit on her one time. She said that they met three other times, along with other friends, prior to the night of the pursuit and subsequent accident. She said he had told her he was a firefighter after she had seen a sticker on his motorcycle that she had asked about. He had also told her he had done stunts and she had seen him do wheelies. Vanessa said that Chuckie never bragged about what he did.

Vanessa said that in the three prior outings, they were always in a car and that the night of the pursuit was the first time on the motorcycle with Chuckie. I asked about the prior outings

State Lic: PI13132
Member: CALI, NALI, WAD, WIN & GIN
Assoc. Member: CACJ
www.klopperpi.com

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 2

and she said the first was with Tiana Moreno, (short for Christiana Moreno), Kevin [Dodd] and

Chuckie. She said they just hung out at a park and smoked some marijuana. The second outing

was with Tiana, Chuckie and Mike (last name unknown), and they just drove up Mount

Hamilton Road and again smoked some marijuana. The third outing was with Tiana, Kevin, and

Chuckie when they went to the movies, and again smoking some marijuana.

Vanessa said that on the night of the pursuit, she had called Chuckie on his cell phone

and suggested going out on the motorcycle. She said she even brought her own helmet, leather

jacket and leather gloves, shoes and jeans. She said that she and Tiana went together in her

(Vanessa's) car and met Chuckie with his friends at a Carl's Jr. The plan was to go bowling at

the Oakridge Lanes. They went to a friend of Chuckie's first and smoked some marijuana. She

said she didn't know the friend's name, but the residence was in the vicinity of White and

Quimby. She said they smoked a blunt [of marijuana] which equaled a few hits per person. The

group consisted of Tiana, Chuckie, Kevin and TJ (last name unknown). They then all left on

motorcycles for the bowling alley. Tiana was riding with Kevin and TJ was alone; she chose to

ride with Chuckie. She said she completely trusted him and had no knowledge that he didn't

have a current driver's license or that he didn't have any insurance.

Vanessa said that they were on Santa Theresa at Blossom Hill and they should have

turned left to the bowling alley. Instead, all of a sudden Chuckie said, "Fuck that; I'm out."

Vanessa said she was focused looking forward and not aware of anything around her. Chuckie

took off and she held on tightly. She said she had no idea what was going on, as the plan was to

go left on Blossom Hill, but Chuckie shot straight ahead on to Hwy 87 northbound. On Hwy 87,

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 3

they passed a couple of exits and she heard sirens. Chuckie started going faster and she then

realized they were being chased.

Vanessa said she started yelling at Chuckie saying, "What are you doing?" "Why?"

"Stop, let me off this bike." She said she was holding on for dear life. Vanessa told me that even

though she wanted off the bike, she never felt that she was being "kidnapped." She said she did,

however, fear for her life. She said she was crying and screaming, but admittedly went of her

own free will with Chuckie. The issue is that he put her life in danger.

Vanessa said that she knew nothing about Chuckie's driving record and believed him to

be responsible, a fire fighter; she never questioned that he didn't have a license or insurance.

Both Vanessa, age 19, and her mother, Marilyn, said that they believe that kidnapping is

just too harsh and would so testify. They both agreed that some punishment is warranted, and

that False Imprisonment is more in keeping with what happened.

Continuing on, Vanessa said that she heard the sirens and it is then she sees the lights

flashing in Chuckies side view mirror. She becomes scared. Chuckie proceeded to pass between

two motorcycles and a big truck, then turned off his lights and exited at Capital Expressway. She

wondered what he was thinking, as she could see the cop right on their tail. She said the cop was

on a motorcycle.

Chuckie made a right turn on Capital Expressway and went against red lights and

Vanessa said she just closed her eyes and was so scared. Somewhere Chuckie made a right turn

and slammed into a car and she went unconscious. Vanessa said that she doesn't remember

anything else until she was on the ground and a cop was standing over her. She seems to recall

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 4

that the cop was asking about drugs and she might have said marijuana, and then she passed out

again.

Vanessa said she has lost Tiana as a friend over this as Tiana has chosen to stay with

Kevin and that group. She said she hasn't talked to Tiana, Kevin, TJ, or anyone since that night.

She said she has a friend by the name of Jose who said that Alex Barrares (spelling?), aka

"TuPock" said she was a bitch and shouldn't show her face at Starbucks. Vanessa said that she

gave notice at her job, as she was afraid to go back as she worked nights and sometimes was

alone. She said that no one called her job place or threatened her, but she is looking to work

elsewhere and in a different location.

I asked Vanessa if Chuckie did any wheelies that night before the pursuit and she didn't

recall any. She said she did ask him how to do a standup and he said he'd show her later.

I asked Vanessa if Tiana came to the hospital that night and she said yes. But according

to Marilyn, it was hours after the accident, around midnight. Marilyn said she was already at the

hospital when Tiana finally showed up. She said she got angry with Tiana for not calling her

right away.

Marilyn interjected here that she spoke to Officer Barrett at the hospital and he told her

all about the pursuit. Vanessa said that Officer Barrett was behind Chuckie and part of the

pursuit. Marilyn said that Officer Barrett gave her a full blow-by-blow of the pursuit and said

that Vanessa skidded on the ground and nearly missed slamming her head into a pole. Marilyn

told me that Officer Barrett said, "This guy is known, but we were never able to catch up with

him. Unfortunately tonight, it was with your daughter." Marilyn told me angrily that the cop

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 5

wanted to chase Chuckie, and Chuckie wanted to be chased and in so doing, they both jeopardized her daughter. Vanessa concurred that if the cop had backed off, the accident wouldn't have happened and that he, as much as Chuckie, put her life in danger.

Vanessa and Marilyn told me that they had contacted an attorney by the name of David Pirrone who is with the Law Office of Paul B. Kemp, located at 2072 The Alameda, San Jose, CA 95126, phone number 408-241-1941. He supposedly is a motorcycle attorney and does personal injury. However, they don't feel he is doing anything to help. He told them that Chuckie didn't have anything, and it was problematic that Vanessa had smoked marijuana prior to the accident.

I asked Vanessa if Chuckie ever said anything back to her when she was yelling for him to stop and she said no. She said he was focused and in his own world. Vanessa and Marilyn both said that they ride motorcycles; Marilyn said she had ridden for years, and both said that you could hear and communicate with each other. Vanessa said she was yelling pretty loud in his ear.

Marilyn told me that when she was talking to Tiana at the hospital, Tiana said that she wanted to follow Chuckie and Vanessa from the start, but Kevin or TJ said, "No, he'll be back." She said Tiana told her "Kevin said, 'Chuckie does this all the time and will be back in a few minutes.'" Marilyn was angry and said that Tiana and the others were hoping he (Chuckie) was going to get away with it. Tiana said she then heard the sirens and knew.

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 6

Vanessa told me that she had had no discussions with Chuckie about being a stunt rider. She did want her own bike and loves to ride. She said she only asked the one question about how to do stand up. Vanessa said she has done wheelies before with Kevin and knew how to do them.

I asked Vanessa if she had seen any white SUV that night when stopped at the light and she said no. She said Chuckie was focused straight ahead. She said he had no exchange with anyone in any vehicle.

I asked Vanessa if she was pregnant at the time and she said yes, but she didn't know it until she was in the hospital. She said she found out she was 6-7 weeks along and the doctors couldn't guarantee that all would be OK. She said she had made a choice to try and keep the baby, but two weeks later had to terminate the pregnancy. Marilyn told me that Vanessa was very sick, throwing up and losing weight, and the choice was saving Vanessa or the baby. Vanessa made it clear, however, that she chose to have the abortion, and that Chuckie should not be held responsible for the death of the baby.

Vanessa told me that she still has pelvic pain and the scars make her self-conscious. She has scoliosis, which she had before the accident, but it is now worse. She said the doctor told her she would never be the same again, and it is unknown if she will be able to carry a baby again.

Vanessa and Marilyn had no other information to offer. They both hope that this case will come to an end soon as they are reluctant to try to get new jobs for fear they will lose them by being called to court again and again. They again reiterated that the kidnapping should be dropped, and that Chuckie should be punished with something reasonable. Vanessa also

Charles Lyons
Re: Vanessa Valle
May 28, 2004
Page 7

expressed the desire to have Chuckie apologize to her. I explained that he could not have contact

with her at this time and she understood.

Respectfully submitted,

Sheila J. Klopper

# E X H I B I T   C O V E R   P A G E :

Exhibit:    D

Description of this exhibit: Reporters transcript held on July 13, 2004

Number of pages of this exhibit:___7___pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

__X__State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        IN AND FOR THE COUNTY OF SANTA CLARA

3     BEFORE THE HONORABLE LINDA R. CONDRON, JUDGE

4

5                 ---o0o---

6

7  PEOPLE OF THE STATE OF CALIFORNIA,

8          Plaintiff,        No.  CC440907

9     vs.

10  CHARLES LYONS,

11         Defendant.

      _____/

12

13               ---o0o---

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16         Held on July 13, 2004

17          MOTIONS IN LIMINE

18

19

20

21         A P P E A R A N C E S:

22  FOR THE PEOPLE:       DAVID BOYD
                      DEPUTY DISTRICT ATTORNEY

23

24  FOR THE DEFENDANT:    MELVIN EMERICH
                      ATTORNEY AT LAW

25

26  REPORTED BY:          CINDI M. JOHNSON, CSR
                      CERTIFICATE NO. 10125

27

28

1        THE COURT:  She smoked marijuana with the

2   defendant.

3        MR. EMERICH:  That Mr. Lyons and she smoked

4   marijuana together.

5        THE COURT:  You are going to say -- or are you

6   going to present evidence, no, they didn't, she did it by

7   herself in effect?

8        MR. EMERICH:  In effect that's correct.

9        THE COURT:  So you want to introduce her statement

10  to police that the defendant was smoking marijuana to

11  impeach it because the district attorney already indicated

12  he does not intend to introduce that evidence?

13       MR. EMERICH:  He is certainly introducing her

14  statements to the police.

15       THE COURT:  No.  He has indicated just now on the

16  record that he does not intend to introduce evidence of the

17  defendant's smoking marijuana.  If the district attorney

18  isn't going to introduce it, what you are telling me, you

19  want to introduce her saying it just so you can impeach her

20  having said it out there at the scene?

21       MR. EMERICH:  That's correct.

22       THE COURT:  Is that the only reason for which you

23  want to be able to introduce evidence of the complaining

24  witness's use of marijuana?

25       MR. EMERICH:  Yes.

26       THE COURT:  Mr. Boyd, your response.

27       MR. BOYD:  Your Honor, if Mr. Emerich has a

28  different recollection of the record as it is before us, at

```
 1    least if he would let me know.  But Ms. Valles told me that

 2    she had used marijuana with the defendant and possibly one

 3    other person.  There's no information in the police reports

 4    that she told them the same information.  If I'm incorrect,

 5    he will correct me.  I just wanted to make that clear.

 6         Your Honor, there is just no inconsistency to

 7    offer the evidence for and since they produced not a single

 8    witness via witness list, the only person I can assume would

 9    testify would be the defendant saying that he didn't use

10    marijuana with her and then maybe the Court can revisit it

11    then.  But to -- essentially what he is suggesting he can

12    establish through witnesses that I guess that it's a lie,

13    that the defendant didn't use marijuana with her.  Let's

14    assume for the sake of argument that's true, that he has no

15    witnesses that he is prepared to present to the People and

16    the Court today that would say that.  So as we understand

17    the case now, it's irrelevant.

18         THE COURT:  All right.  Anything further,

19    Mr. Emerich?

20         MR. EMERICH:  With regards to that, no.

21         THE COURT:  As to the complaining witness's use of

22    marijuana for the purpose of impeaching her credibility, I

23    am ordering it be excluded.  If at some point, Mr. Emerich,

24    you wish to propose to the Court an alternative theory for

25    its relevance or introduction if you believe the state of

26    the evidence has changed such that this issue could be

27    revisited, of course you can bring it to the attention of

28    the Court and counsel outside the presence of the jury and
```

1          THE COURT:  Mr. Emerich, I'm going to grant the

2    People's motion to exclude evidence of the complaining

3    witness's motorcycle rides with her ex-boyfriend at this

4    point in time.

5          Now if at such time you can point to the Court by

6    way of offer of proof a specific statement of the victim

7    relevant to the inquiry being made here, since the element

8    of fear or force is clearly an essential element of the

9    People's case and burden, and if you can in fact point to a

10   statement where she relied on the absence of that experience

11   to satisfy one of those elements or to help establish that,

12   then certainly bring that to the attention of the Court out

13   of the presence of the jury and I will readdress the issue.

14         With respect to whether or not the defendant was

15   able to hear her, that is so minimally probative, if it is

16   probative at all, and frankly I have a doubt based on the

17   absence of any similarity or demonstration of similarity of

18   circumstances, and even if it is so minimally probative as

19   to be greatly outweighed by its prejudicial effect and

20   confusion of the issues and undue consumption of time.  The

21   motion is granted.

22         However, once again as I have indicated, facts can

23   come out during the course of the trial and circumstances

24   can change and you may always renew your offer of this

25   evidence should that be the case.

26         People's fifth motion in limine.

27         MR. BOYD:  Your Honor, simply that the defense be

28   required to provide the evidence under Penal Code Section

1    1054.3 of the name and addresses of witnesses as well as any

2    physical evidence they intend on introducing as well as any

3    experts they may call and reports and statements thereof.  I

4    have received nothing to date.

5              THE COURT:  Yes.  I know that this is the third

6    time this matter has been on the trial calendar,

7    Mr. Emerich, and you have just indicated to the Court that

8    you have five or six witnesses you intend to call.

9              MR. EMERICH:  Your Honor, yes.  I have failed to

10   provide a witness list in part because I don't know the full

11   names and addresses of all the parties that I intend to

12   call.  I have indicated last week to Mr. Boyd -- I had just

13   come out of another trial -- I haven't had this case very

14   long and I indicated that I would have it for him as of

15   yesterday but I do not myself have them prepared.  I will

16   have them prepared first thing tomorrow morning.

17             THE COURT:  By five p.m.  It's not even noon yet.

18   There's nothing to prevent you from handwriting a list of

19   the information you have and getting that to the district

20   attorney by then.

21             MR. EMERICH:  Do I just leave it at the desk?

22             MR. BOYD:  That would be fine.

23             MR. EMERICH:  He'll have it.

24             THE COURT:  Sixth motion on behalf of the People.

25             MR. BOYD:  Your Honor, this isn't a motion but I

26   just want the Court to be aware of it.  I provided to Ross

27   McMahon a number of months ago the police reports regarding

28   a prior 2800.1 of the defendant.  The year that he committed

1    MR. EMERICH: My motion was to not go forward with

2    this case at this time basically and request a continuance,

3    because as I advised the Court, I learned on Saturday

4    specifically that there was a witness who was at the scene

5    of the accident who was from Fire Station 13 whose identity

6    we do not have.  I only came to know this on Saturday

7    that -- became aware that this is a witness who could be

8    very critical with regards to the alleged statement made by

9    the defendant to the officer because this person was present

10   when the conversation took place and also spoke with

11   Mr. Lyons and Mr. Lyons told both this person whose name we

12   don't have and Officer Banuelos something very different

13   than what Officer Banuelos put in his report.

14   THE COURT: So Mr. Lyons has known of the

15   existence of this person since the very least he was

16   representing himself and taking all action in terms of

17   investigation and subpoenaing witnesses and records?

18   MR. EMERICH: That would be apparently true,

19   although given Mr. Lyons' lack of sophistication in

20   representing himself, he may not have come to understand at

21   such a stage of the proceedings the critical nature of this

22   witness.

23   THE COURT:  Mr. Lyons' pro per status, counsel,

24   was not revoked on the grounds of incompetence.  And during

25   such time as he or she acts in his own behalf, based on what

26   I have seen in the Court's file, doing a fairly fine job of

27   exercising every possible means of investigation and

28   preparation at his own behest.  I'm not going to grant a

1    continuance, counsel.  There has been more than sufficient

2    time for the necessary inquiries to be made, subpoenas to be

3    issued and witnesses to be interviewed and served.

4         However, this case is not going to proceed to its

5    evidentiary phase in all likelihood until Monday of next

6    week.  You are going to have more than sufficient time to

7    get on the phone, identify the parties and get them served.

8         If once you have this witness served and

9    interviewed, if you elect to do so and you feel that you

10   discover additional information which you feel is vital to

11   the defense, which would of course at that point be

12   something of a surprise I suspect to you and counsel, you

13   may then request a brief continuance necessary for the

14   purpose of that investigation.  But you have more than

15   sufficient time during the pendency of this proceeding to

16   subpoena and secure the attendance of that witness.

17        So the motion to continue on that grounds is

18   denied, there being no due diligence shown in this case with

19   respect to this nor any true showing that this witness can

20   present material and relevant evidence on the issue that you

21   have suggested, which is impeaching the officer's testimony

22   regarding the contents of that statement.

23        Second motion on behalf of the defense.

24        MR. EMERICH:  Actually, Your Honor, at this point

25   I have nothing further.

26        THE COURT:  All right.  Now we are going to take

27   up the motion with respect to the impeachment priors

28   tomorrow morning.  And so if you have any additional matters

# EXHIBIT COVER PAGE:

Exhibit: ___E___

Description of this exhibit: Reporters transcript held on 10/1/04 & declaration of petitioner

Number of pages of this exhibit: ___6___ pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_X___State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

COPY

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SANTA CLARA

3          BEFORE THE HONORABLE LINDA R. CONDRON, JUDGE

4

5                          ---oOo---

6

7     PEOPLE OF THE STATE OF CALIFORNIA,

8              Plaintiff,              No.  CC440907

9          vs.

10    CHARLES LYONS,

11              Defendant.
      _____/

12

13                          ---oOo---

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Held on October 1, 2004

17

18

19

20

21              A P P E A R A N C E S:

22

23

24    FOR THE DEFENDANT:        MELVIN EMERICH
                                ATTORNEY AT LAW
25

26    REPORTED BY:             CINDI M. JOHNSON, CSR
                               CERTIFICATE NO. 10125
27

28

```
 1    San Jose, California                    October 1, 2004

 2

 3                     P R O C E E D I N G S

 4           THE COURT:  Back on the record in the matter of

 5    People versus Lyons.  Once again, we are in a closed court.

 6    The only persons present are myself, my court staff, the

 7    defendant and his attorney, Mr. Emerich.

 8           Mr. Lyons, I reviewed my notes of our discussions

 9    yesterday with respect to your request to fire your attorney

10    and to have the Court appoint an attorney to represent you

11    because of your lack of funds to hire another attorney.  Am

12    I correct on that?

13           THE DEFENDANT:  Correct.

14           THE COURT:  One of the things that you told me,

15    sir, was that you wished to withdraw your plea because you

16    felt you were pressured or coerced into entering that plea

17    on the basis of information that you felt -- and I'm

18    summarizing of course -- was not either not fully

19    investigated or fully understood by your attorney, is that

20    correct?

21           THE DEFENDANT:  Correct.

22           THE COURT:  Those comments I believe clearly

23    establish a conflict of interest between yourself and

24    counsel with respect to any possible motion to withdraw a

25    plea.  You indicated to me yesterday on the record also,

26    Mr. Lyons, that immediately after entering that change of

27    plea you made numerous efforts to contact your attorney

28    about those concerns, is that correct?
```

1    THE DEFENDANT:  That's correct.

2    THE COURT:  This being the case and the fact that

3    you have demonstrated what I think clearly is a conflict of

4    interest in this regard, I am going to allow you to have

5    counsel appointed for you who can represent you with respect

6    to the issues that you have regarding the entry of your plea

7    in this case and those matters that are in conflict with

8    Mr. Emerich's representation of you.

9    I'm going to refer you to the public defender at

10   this time.  They will come out and interview and either

11   appoint an attorney to represent you from their office, or

12   if they have any kind of conflict, they will refer you to or

13   ask the Court to refer you to the alternate defender's

14   office for appointment of an attorney from that office.  In

15   other words, if there's anything in terms of maybe they have

16   represented someone who was a witness against you or

17   something like that, then the public defender wouldn't be

18   able to represent you.  You are going to have a

19   court-appointed attorney for this purpose.  I'm going to

20   continue this matter for that purpose.

21   THE DEFENDANT:  Would it be appropriate to ask I

22   have a particular public defender that I have in mind?

23   THE COURT:  No, you cannot, sir.  There is no

24   choice of public defender available to you.  You can have a

25   court-appointed attorney but you are not entitled to your

26   choice of the court-appointed attorney.

27   THE DEFENDANT:  It's not a court-appointed.  Okay.

28   I understand.  Okay.

1    THE COURT:  Deputy or Mr. Emerich, would you be

2    kind enough to tell Mr. Boyd that he may step back in.

3    MR. EMERICH:  Your Honor, and while I'm not

4    objecting to the termination, I did want to say that I did

5    advise Mr. Lyons that once we had the report in hand I would

6    be out and spend significant time.  I did speak with him on

7    a couple occasions with --

8    THE COURT:  That matter is really not before me

9    because the issue that's really presented here is not a

10    question of firing counsel pretrial or at any other point.

11    What Mr. Lyons wants to do is make a motion to withdraw his

12    plea.  That's clear.  You can't bring that motion on his

13    behalf because it appears to be based entirely on his

14    concerns about your representation during the entire

15    negotiations process.  That needs to be investigated by

16    somebody else.

17    MR. EMERICH:  Thank you, Your Honor.

18    THE COURT:  Court reporter, I am ordering that

19    this portion of these proceedings remain under seal under

20    further order of the Court.

21    (End of Marsden type hearing.)

22    ---oOo---

23

24

25

26

27

28

1 | LAW OFFICES OF THE PUBLIC DEFENDER
JOSE R. VILLARREAL, #96091
2 | PANTEHA EBRAHIMI, # 200968
County of Santa Clara
3 | 120 W. Mission St.
San Jose, California 95110
4 | Telephone: 408 299-7180

5 | Attorneys for Defendant

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | PEOPLE OF THE STATE OF CALIFORNIA, | No. CC440907

12 | Plaintiff, | MOTION TO WITHDRAW PLEA
[PENAL CODE SECTION 1018]
13 | -vs-

14 | | Date: 12/23/04
Time: 2:00 p.m.
15 | CHARLES LYONS, | Dept.: 25
Defendant. | Time Est.: 15 min
16 |

17

18 | TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND
TO THE DISTRICT ATTORNEY FOR SANTA CLARA COUNTY:
19

20 | I, CHARLES LYONS declare:

21 | 1. That I am the defendant in the above entitled action.

22 | 2. When I hired Mr. Emerich to represent me in this case, I made sure that it was clear to

23 | him that I wanted to proceed to jury trial.

24 | 3. I believed that Mr. Emerich would be aggressive at trial, and that even if I happened to

25 | lose, he would win my "Romero".

26 | 4. That on July 14, 2004, when the case was sent out for trial, Mr. Emerich informed me

27 | that he thought I should plead guilty because if I were to lose at trial, I would be facing more than

28 | 30 years in prison.

5. I felt that Mr. Emerich pressured me to take a plea deal rather than go to trial because

1

DECLARATION OF CHARLES LYONS

1    Mr. Emerich was getting married the following week.

2        6. Based on my conversations with Mr. Emerich, I did not feel that he was adequately

3    prepared on my case as he was planning a wedding.

4        7. That before I pled guilty, he explained to me that if I proceeded to trial, my maximum

5    exposure was 30 years and 4 months.   I was never explained anything about how that would

6    work. He never told me how much I would have to serve or how long I would be on parole.

7        8. He also informed me that under the plea bargain that I was being offered by the deputy

8    district attorney, I would be facing a maximum of 22 years and 4 months. He did not think that

9    I would be sentenced to that time as he had a "good feeling" that this judge would grant a

10   Romero. Mr. Emerich told me that he always knew the outcome of his Romero hearings before

11   he pled the person in. He informed me that it was likely that my Romero would get granted.

12       9. If I was aware that my maximum exposure was indeed 26 years, and 8 months if I was

13   convicted on all the charges, I would never have agreed to give up my rights to a jury trial. I

14   would have definitely taken my chances at trial, especially in light of the fact that I felt strongly

15   about fighting the charges from the beginning of my case and had communicated that desire to

16   all of the attorneys that I had and the judges that I appeared in front of when I was pro per.

17       10. That I did not become aware of all of the above problems and issues until after I had

18   already pled.

19       I declare under penalty of perjury that the foregoing is true and correct.

20       Executed on November 30 , 2004, at San Jose, California.

21

22                                    _____
                                         Charles Lyons
23

24

25

26

27

28

                                          2
_____
                    DECLARATION OF CHARLES LYONS

# E X H I B I T   C O V E R   P A G E :

Exhibit: _____F_____

Description of this exhibit: Reporters transcript held 10/14/04

Number of pages of this exhibit:___3_____pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

___X__State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          IN AND FOR THE COUNTY OF SANTA CLARA

3       BEFORE THE HONORABLE LINDA R. CONDRON, JUDGE

4

5                  ---o0o---

6

7  PEOPLE OF THE STATE OF CALIFORNIA,

8            Plaintiff,         No.  CC440907

9     vs.

10  CHARLES LYONS,

11          Defendant.

12  _____/

13                  ---o0o---

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          Held on October 14, 2004

17

18

19

20

21          A P P E A R A N C E S:

22  FOR THE PEOPLE:         DAVID BOYD
                       DEPUTY DISTRICT ATTORNEY

23

24  FOR THE DEFENDANT:      MELVIN EMERICH
                       ATTORNEY AT LAW

25
                       RALPH BENITEZ

26                       DEPUTY PUBLIC DEFENDER

27  REPORTED BY:            CINDI M. JOHNSON, CSR
                       CERTIFICATE NO. 10125

28

```
 1   San Jose, California                    October 14, 2004

 2

 3                      P R O C E E D I N G S

 4        THE COURT:  We have Charles Edward Lyons.

 5        MR. BOYD:  David Boyd for the People.

 6        THE COURT:  Do we have a representative of the

 7   Public Defender's Office here in this matter?

 8        MR. BENITEZ:  Ralph Benitez with the Public

 9   Defender's Office appearing for Ms. Ebrahimi.  She is out at

10   a training conference.  She will be assigned this case.

11        THE COURT:  So are you representing that

12   Ms. Ebrahimi is stepping in as counsel then in this matter?

13        MR. BENITEZ:  That is correct.

14        THE COURT:  I see that we also have present

15   besides Mr. Boyd from the district attorney's office.  We

16   have Mr. Emerich.

17        Sir, are you prepared to turn over or have you

18   turned over to the representative of the Public Defender's

19   Office the materials in this case?

20        MR. EMERICH:  I have in fact turned them over to

21   the receptionist of the Public Defender's Office in this

22   case.

23        THE COURT:  We now have with us Mr. Lyons.

24        Mr. Lyons, the public defender is prepared to step

25   in and represent you in this case as you had requested and I

26   have allowed that representation to take place.  Your

27   attorney will be turning over to the public defender all of

28   the materials that they will require to investigate this
```

1    matter and to proceed in your behalf.

2          I will allow Ms. Ebrahimi to substitute in as

3    counsel at this time and, Mr. Emerich, you are relieved.

4          Counsel, how much time is Ms. Ebrahimi requesting

5    to be able to review the file and to determine whether or

6    not any motions should be filed or to prepare for the

7    sentencing in this case?

8          MR. BENITEZ:  Your Honor, in this case, it all

9    depends on whether the transcript of the plea has been

10   ordered.  I'm not sure if they have been.  If they haven't

11   been, probably would be at least two weeks for the

12   transcript to be at our office for Ms. Ebrahimi to review

13   the records and talk to our new client to ascertain whether

14   a motion to withdraw plea will be drafted.

15         THE COURT:  All right.

16         MR. BENITEZ:  Can we put in on for the 4th of

17   November?

18         THE COURT:  No, sir.  We now have a very busy day

19   on November 4.

20         MR. BENITEZ:  Is November 18 available?

21         THE COURT:  November 18, two p.m. in this

22   department for status and to set a sentencing and/or motions

23   date.

24         MR. BENITEZ:  Thank you, Your Honor.

25         (Whereupon, court was adjourned on this matter.)

26                      ---o0o---

27

28

# EXHIBIT   COVER   PAGE:

Exhibit:  ___F 1_____

Description of this exhibit: Declaration of Attorney Panteha Ebrahimi & letter to Attorney
Melvin Emerich

Number of pages of this exhibit:___3_____ pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

___X___State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

COPY

1 | LAW OFFICES OF THE PUBLIC DEFENDER
  | MARY GREENWOOD, #99728
2 | PANTEHA EBRAHIMI, # 200968
  | County of Santa Clara
3 | 120 W. Mission St.
  | San Jose, California 95110
4 | Telephone: 408 299-7180

**ORIGINAL**

5 | Attorneys for Defendant

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11

12 | PEOPLE OF THE STATE OF CALIFORNIA,     Santa Clara County
                                            Superior Court Case No. CC440907
13 |                              Plaintiff,

14 |                    -vs-                DECLARATION OF
                                            PANTEHA EBRAHIMI
15

16 | CHARLES LYONS,

17 |                             Defendant.

18

19

20 | I, Panteha Ebrahimi declare:

21 |       1. I, Panteha Ebrahimi, am a Deputy Public Defender for the County of Santa Clara.

22 |       2. On or about November 18, 2004, I was assigned to represent Mr. Charles Lyons on a

23 | motion to withdraw the plea in Santa Clara County Superior Court case number CC440907.

24 |       3. I was assigned to represent Mr. Lyons after he entered a plea of guilty in this matter.

25 |       4. At the time Mr. Lyons entered his plea of guilty, he was represented by attorney Melvin

26 | Emerick.

27 |       5. I do not recall seeing or receiving any audio tapes from the prior attorney.

28 |       6. There are no audio tapes in our closed file for Mr. Lyons.

1

DECLARATION OF PANTEHA EBRAHIMI

1

2     I declare under penalty of perjury that the foregoing is true and correct.

3     Executed on January 31, 2007, at San Jose, California.

4

5                                        *Panteha Eblali*

6                                        Panteha Ebrahimi
                                         Deputy Public Defender

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

Charles E. Lyons, V-76614
C.S.P. Solano (12-229)
P.O. Box, 4000
Vacaville, Ca. 95696

 **COPY**

Melvin L. Emerich
Counsler At Law
4600 El Camino R1. Suite# 205
Los Altos, Ca. 95036

Re: Case No. CC440907

Subject: Letter of demand

December 24, 2007

Dear Mr. Emerich

    Inclosed with this writing you will find previous letters of demand that were
written to you by myself starting from 8/13/04, and the last being 2/26/07, a copy
of the Writ of Habeas Corpus that has been filed to the courts.
    My family has made a number of efforts to contact you by phone, they have left
memo massages with your secretary, and on your voice-mail, both were unsuccessful.
I can't help but noticing that you have failed to answer my demand
    The documents and inquiry that you are obligated to hand over to me are as
follows:

1) any and all documents, notes and other papers pertaining to the investigation of
   fact that you fortified in this matter, i.e. phone calls, investigation report,
   and subpoenas.

2) Any and all documents, notes, and papers pertaining to the research of facts and
   the facts of law to the allegations i was charged with.

3) Any all documents, notes and other papers of any interviews with potential defense
   witnesses that could and would have under-minded the prosecutions case.

4) An explanation as to Why you failed to obtain and secure an expert in the field
   of accident reconstruction, sound expert, and an law enforcement expert that could
   testify to pertinent facts of physics and the dishonesty of law enforcement in
   this matter.

5) An explanation as to why you did not enter my helmet I gave you in June into
   evidence as a burden of proof that I earplugs in my ears that were attach to my
   helmet.

6) An explanation as to why you did not follow up on the 995 motion to the elementles
   P.C. 207 that I gave you all the moving papers for.

7) An explanation as to why you did not follow up and or file a pitchess motion s

we discussed at the start of this case.

8) An explanation  as to why you did not follow up and or file a bail reduction
   motion.

9) Any and all itemized ledger documents of services rendered towards this case from
   6/13/04 to 10/14/04.

   I have filed a Writ of Habeas Corpus in the Supreme Court of California (enclosed)
on the issue of ineffective assistance of counsel for your manner in which your
handling of this case. I would ask you for your own omissions in a declaration to
alleviate any further hard fellings we may have towards one other. all I am asking
for is the truth for what it worth, my life!.

Sincerely,

Charles E. Lyons

Charles E. Lyons

Melvin L. Emerich                                        August 13, 2004
Counselor At Law
4600 El Camino Real Suite 205
Los Altos, CA. 94022


Charles E. Lyons ll
Bk# CBW957
P.O. Box, 361870
Milpitas, Ca. 95036




Dear Mr. Emerich

    I am writing you this letter with the hopes of clearing up any
confusion that l may have. To do so could you please send to me a copy of
the contract agreement that I signed. Also too along with that request l
would also ask for an itemized billing of services rendered in this case since
July 13, 2004. l want to express to you that l am not trying to cause any
conflict of interest with yourself, but l do wish to come to terms with you on
this without any conflict or animosity towards one-another.



Respectfully Submitted

Charles E. Lyons

Melvin L. Emerich                                    September 9, 2004
Counselor At Law
4600 El Camino Real Suite 205
Los Altos, CA. 94022


Charles E. Lyons II
Bk# CBW957
P.O. Box, 361870
Milpitas, Ca. 95036


Dear Mr. Emerich

    I wrote you a letter on August 13, 2004 and I cant help but noticing
that you never responded back to me with the items that I have requested
from you. I have made a number of calls to you and left you messages and
my family has done the same, and still I haven't heard from you nor have
you made an attempt to come talk to me or answer any of my families calls
back to this date. I am having a real hard time dealing with this issue with
you. I have expressed to you that I want to retract my plea and go to trial. I
know that you were not ready to go to trial with this case do to other
circumstances outside this matter and I feel that it was easer for you to have
me plea out instead, that's just my feelings. I put all my trust in you and your
ability to do what you said you were going to do in the beginning of this and
you let me down. I want you to understand that I am not attacking you but I
am merely not satisfied with the manner in which you have handled this case.
    I feel that we need to talk face to face to resolve this as soon as
possible to avoid any other conflict. I would ask that you bring with you a
copy of the contract agreement that I signed with you and an itemized billing
of services rendered since July 13, 2004. If I don't hear form you next week
I will be forced to take other actions that I should have to do with you.

Sincerely

Charles E Lyons

Melvin L. Emerich                                    October 7, 2004
Counselor At Law
4600 El Camino Real Suite 205
Los Altos, CA. 94022



Charles E. Lyons II
Bk# CBW957
P.O. Box, 361870
Milpitas, Ca. 95036


Dear Mr. Emerich

    I am sorry that this has to come down to this; however there are still some issues that we have to resolve. To alleviate any further problems I would ask that you return $3,500.00 to me as soon as possible. It my feeling that $1,000.00 is more then generous for the limited services you provided for this case. I would like avoid needing to contact State regulatory authorities with this problem.


Sincerely

Charles E Lyon

Charles E. Lyons II, V-76614                     January 26, 2007
C.S.P. Solano (12-225)
P.O. Box, 4000
Vacaville, Ca. 95696


Melvin L. Emerich
Counselor At Law
4600 El Camino Real, Suite 205
Los Altos, Ca. 94022


Re: Missing Discovery Dispatch Tapes

Dear Mr. Emerich

     I am writing you this letter in concern of missing discovery
items that you had in your possession; (In Re: People v. Charles
E. Lyons, Case No.440907) from June 04 to October 04.

     In June 04, I personally handed over to you, two audio
cassettes tapes and accompanying transcript of the C.H.P.
Dispatch recordings. One of the tapes I received from the
District Attorney assigned to this case, and the second tape I
personally subpoenaed from the C.H.P. Golden Gate Communication
Center in Vallejo, (Subpoena received by Sgt. Jim Castano on
6/16/2004).

     I took the liberty to speak with the Attorneys from the Public
Defenders Office, and she does not recall the dispatch tapes
being included with the discovery items you handed over to  the
Public Defenders Office; and she is more then willing to make
a declaration as to such.

     Mr. Emerich you know as well as I, that there are allot of
unresolved issues that needs to be addressed and resolved in this
matter so that I may receive a Due Process of Justice. At a later
time I do wish to discuss with you some issues I have in matter,
so that we can come to terms without any further conflict or
animosity.


Sincerely,

Charles E Lyons

Charles E. Lyons

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the City of Vacaville in County of Solano, State of California; I am over the age of 18 years old and not a party to the within action; my address is C.S.P. Solano, P.O. Box, 4000, Vacaville, California 95696. On December 24, 2007, I placed a true copy of the following: Letter of demand and past correspondence attached, in a sealed envelope with postage thereon fully prepaid, in the United States Mail at C.S.P. Solano Mailbox. At the time of mailing there was regular delivery of U.S. Mail between the place of deposit and the place of address, addressed as follows:

Melvin L. Emerich
Attorney at Law
4600 El Camino Rl. Suite #205
Los Altos, Ca. 95036

Executed at Vacaville, California, on December 24, 2007

Mailliard L. King, K-06711

S159110

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re CHARLES EDWARD LYONS II on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

JUN 1 1 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

**D E C L A R A T I O N   O F
S E R V I C E   B Y   M A I L
[ 2 8   U . S . C .   §   1 7 4 6 ]**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES EDWARD LYONS, II, | ) | CASE No._____ |
| | ) | |
| Petitioner, | ) | |
| | ) | DECLARATION OF |
| | ) | SERVICE BY MAIL |
| -vs- | ) | |
| | ) | |
| | ) | |
| D.K. SISTO, Warden, | ) | |
| a person having custody | ) | |
| of petitione, | ) | |
| Respondent. | ) | [28 U.S.C. § 1746] |
| | ) | |

    I, **Jamil Howard**, am a resident of the State of California, County of Solano.
I am over the age of 18 years and not a party to the above-entitled matter. My
prison address is: C.S.P. Solano Post office Box, 4000, Vacaville, California
95696-4000. My prison identification number is T-43569.
    On June 2 2, 2008, I served the foregoing: Petition for Writ of Habeas
Corpus, Brief and Exhibits In Support Thereof, on the Court named below, by
placing the original and correct copy thereof, in a sealed envelope with postage
fully paid thereon, and delivering said envelope and above-described legal
papers to a duly authorized California Corrections Officer, as prescribed and
so provided for the deposit of legal mail in the United States Mail at Solano
State Prison.


United States District Court
Northern District of California
Attn: Office of the Clerk
450 Golden Gate Avenue
Box, 36060
San Francisco, California 94102


    I declare under the penalty of perjury, under the laws of the state of
California, that the foregoing is true and correct, and that this declaration
was executed at Solano State Prison, in Vacaville, California.

                                    _____
                                    Jamil Howard
                                    Declarant

///

CHARLES E. LYONS, II, V-76614
C.S.P. SOLANO (12-229)
P.O. BOX 4000
VACAVILLE, CA. 95696



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE ™
LABEL 107R, OCT 1997        www.usps.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
ATTN: OFFICE OF THE CLERK
450 GOLDEN GATE AVENUE
BOX 36060
SAN FRANCISCO, CA. 94102

proe